514 P.2d 533

George R. AIKEN and Donna M. Aiken, husband and wife, dba Duke Aiken Investment Co., a Utah partnership, Plaintiffs and Respondents,

v.

James H. BURROWS and Ada Burrows, his wife, Defendants and Appellants.

No. 13223.

Supreme Court of Utah.

Sept. 21, 1973.

2. Gates v. State, 90 Okl.Cr. 380, 214 P.2d 451; State v. Dillon, 104 Ariz. 33, 448 P. 2d 89; State v. Brown, 35 Wash.2d 379, 213 P.2d 305.

A. Durham Morris, Cedar City, for defendants-appellants.

LeRay George Jackson, Delta, for plaintiffs-respondents.

HENRIOD, Justice:

Appeal from a summary judgment of specific performance ordering defendants to execute and deliver a release of mortgage to a piece of ground. Affirmed, with no costs awarded.

This suit is the outgrowth of an escrow agreement between Burrowses as sellers and Bar J Bar Land and Cattle Company, Inc., as buyer, dated May 14, 1969, in which the Company, as grantee, ostensibly agreed over the signature of the plaintiff here, George R. Aiken, as president, to pay $106,000 for a tract of land, including certain lots to be paid for $1,000 at signing of an Earnest Money Receipt, $4,000 to be paid on execution and filing of the agreement, $5,000 at the close of the escrow agreement and $7,500 one year from its date and $7,500 annually thereafter till the entire amount, at 5% interest, was paid. Plaintiffs alleged that the terms of the agreement have been complied with, and the record reveals no denial of this allegation, the defendants having filed no answer or other pleading save a motion for summary judgment. The agreement provided for periodic selections by the grantee of lots or parts of the larger tract, at which times the defendant grantors would execute and deliver releases of mortgage upon payment of the stipulated $300 for each lot selected. This suit followed the refusal, after tender of such amount for a specific lot, to execute such release. Plaintiffs, as partners, alleged that they were successors in interest to the Bar J Bar Corporation, which, after the agreement, was discovered not to have been incorporated at all. In what capacity it operated and/or its identity as a legitimate entity to do business is not reflected in the pleadings. However plaintiff, George R. Aiken, in an affidavit in support of a motion for summary judg-

ment, alleged that having learned of the incapacity of the Bar J Bar, notified Burrows of such fact and that "said defendants indicated it would not be necessary to make a new escrow agreement with plaintiffs as designated buyers." Whereupon the Burrowses withdrew the deed to the Bar J Bar after executing and delivering to the escrow (bank) a new deed naming the plaintiffs as grantees.

The Burrowses did not file an answer, but relied on their own motion for summary judgment whose only thrust or defense was the incapacity of the Bar J Bar to enter into the escrow agreement as a corporation since it was shown not to be a corporation in the legal sense.

Under the circumstances outlined, the trial court granted plaintiffs' motion for summary judgment and decreed that Burrowses execute and deliver a release of mortgage on the lot and that plaintiffs deliver $300 to defendants.

■ Defendants filed a certificate of non-intention to rely on the transcript of evidence, designated only the pleadings and supporting affidavits on appeal, but filed no other pleadings, responsive or otherwise.

There is a lot of talk on both sides about waiver, estoppel, incapacity to contract, failure to have hearings on notice, etc. both in and dehors the record in this case. The uncontroverted facts however, dispel any necessity to urge such matters, or to canvass them here. The plaintiffs' pleading recites compliance with the terms of the escrow agreement, which would appear to be the payment to defendants of $1,000 at the outset, $4,000 on signing and filing of the agreement and $5,000 on closing of the escrow (deposit of deed, etc.), aggregating $10,000. The first anniversary date of the transaction was May 14, 1970, calling for a $7,500 payment, together with two more $7,500 anniversary payments before this suit was filed, representing a subtotal of $22,500 or a grand total of $32,500, received by defendants, who now, after three years,—and for the first time after suit filed,—rely *solely* on the incapacity of a grantee that apparently mistakenly was a ghost corporation without a charter,—without indulging the equitable courtesy of tendering back the payments they had received. Equity will neither pick up pins nor shrink the Chancellor's foot.

The answer to this case is that there appears to be no rule in an equity case such as this, that would not lend its blessing to a substitute agreement, with consideration and lives in being, concurred in by all parties, by execution of a substitute deed to carry out the intentions of the parties, resulting in a fait accompli that would distill an ectoplasmic unrealism into a realistic, vital substance reflecting common, visible horse-sense justice.

As to the attorneys' fees awarded, we reject and reverse such award since there is no suggestion that it was based on sworn testimony.

CALLISTER, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.